---

ONTARIO The (FLANNERY v.). See Case No. 4,856.

ONTARIO (SMITH v.). See Cases Nos. 13,085 and 13,086.

---

## Case No. 10,544.

### The ONYX.

[Cited in Treat v. The Rainbow, Case No. 14,161. Nowhere reported; opinion not now accessible.]

---

## Case No. 10,545.

### OOLOGAARDT v. The ANNA.

[12 Int. Rev. Rec. 130; 9 Am. Law Reg. (N. S.) 475.]

District Court, D. Rhode Island. 1870.

BOTTOMRY—SUBSEQUENT GENERAL AVERAGE LOSS.

1. Where a vessel is libelled and sold on a bottomry bond, the fund in court is not subject, as against the bondholder, to any claim for a general average loss subsequent to the date of the bond.

2. Whether the admiralty has jurisdiction of a suit in rem for a general average loss, quære?

This was a petition by T. & J. Coggeshall, of Newport, against the proceeds of the sale of the brig, on account of general average expenses. On the 24th of February, 1870, the firm of Oologaardt & Bruinier, of Amsterdam, in the kingdom of the Netherlands, exhibited in this court their libel against the brig Anna, of Maitland, Nova Scotia, Robert Dart, master, then lying in the port of Providence in this district, articulately propounding in substance, that by virtue of a certain instrument of hypothecation and bottomry, made by said Dart, as master, on the 25th of November, 1869, in the parish of Helden, in the province of North Holland, in the kingdom of the Netherlands, they were entitled to a decree of this court against the said brig for the sum of $2,195.14 in gold,—and praying process in admiralty against said vessel, to compel or secure payment of said sum, with incidental costs and charges. A decree of sale was entered, without opposition, on the 2d of March, 1870, when, also, the claim of the libellants for the sum aforesaid was ascertained and allowed, and on the 19th of March the net proceeds of the sale ($2,300, less $98.94, costs of sale), $2,201.06, were lodged in the registry. Out of this fund, the libellants assenting, on the 21st of March, were paid to petitioning seamen and material men, the gross sum of $159.42, leaving in the registry for the payment of taxable costs and the libellant's claim as aforesaid, the sum of $1,541.54. Out of this, the said Capt. Dart, although a part owner of the vessel, by petition, prayed payment of his wages in arrears, amounting to $270, grounding his claim upon section 52, St. 7 & 8 Vict., and notice was given to the court and the libellants that yet another claim upon the fund, for salvage or of the nature of a salvage claim, would be preferred in the course of a few days. On the 26th of March the petition of the captain was dismissed with costs, and in pursuance of notice as aforesaid. the petition of T. & J. Coggeshall claiming payment of the sum of $218.67 was filed.

Payne & Tobey, for petition.
Browne & Van Slyck, for libellants.

KNOWLES, District Judge. The claim is in the name of T. & J. Coggeshall, but it appears from the testimony that, as regards this matter, we may view John Coggeshall as composing the firm. He alone acted, spoke and wrote, and he alone testifies in support of the claim. In fact, the only evidence submitted is his deposition with its exhibits, A and B,—the first a document entitled "General Average Statement," signed "Bradford & Folger, Adjusters of M. Losses"; the second an account of T. & J. Coggeshall

against the "Brig Anna, of Maitland, N. S., cargo and all concerned," amounting to $710.46, comprising thirty-five items, the largest of them $200 for their "services and responsibility," the smallest 27 cents for a telegram from Capt. Dart to somebody not named. To this amount the adjusters add a charge of $50 for their services, one of $3 for drawing a marine protest, and a third of $19.08 for commissions for collecting general average at 2½ per cent., making a gross sum of $782.54—of which amount the petitioners, quoting as unimpeachable and unobjectionable, the adjusters' statement, claim that $218.63 should be paid them out of the proceeds of the vessel in the registry; freight being bound (as say the adjusters) to pay $105.63, and the owners of the cargo, $458.28.

In support of this claim the petitioners first invite attention to a paragraph (said but not proven to be an extract from the brig's log book) prefixed to the adjusters' statement, narrating as facts the following, viz.: That the vessel sailed from Amsterdam, November 15, 1869, with a cargo of scrap iron and empty casks for Providence, R. I.; had severe weather all the voyage, and on the 6th of December discovered a leak of three to four hundred strokes per hour, requiring the use of one pump all the time in bad weather; the jib stay sails and other sails split. That on the 10th of February, the vessel arrived at Newport, and anchored off Rose Island between 1 and 2 p. m., when, after furling sails, it was discovered that the vessel was leaking very much more. That then, with four extra men from shore, commenced and continued pumping until 4 a. m., February 11th, when the revenue cutter came along side and towed the vessel into the inner harbor about 5 a. m., where she grounded in 14 feet water, having 7½ feet of water in her hold; and that subsequently she was pumped out and towed to Providence, (a distance of thirty miles,) with cargo on board.

Next in support of the claim, the deposition of John Coggeshall, the claimant, was read, of which the material portions were these, viz.: He is 38 years of age, resides in Newport, and is, and has been for many years, the agent for the New York board of underwriters. On the morning of the 11th of February, in consequence of a message from the captain of the revenue cutter, he went on board the cutter, where he was informed that the Anna was lying in the outer harbor in a leaky condition, liable to sink; in view of which fact the captain of the cutter had deemed it proper to notify the witness, as an agent of underwriters, who might be interested in the vessel or her cargo. The result of the conference between the captain and the witness was, that some of the cutter's men were put on board the brig, her anchor taken up, and she taken in tow by the cutter and brought into the inner harbor of Newport, in shoal water. Then says the witness: "I went on board the brig, and found there part of the cutter's crew, and the mate of the brig Anna and a portion of her crew. After that, by my advice, the brig was put in shoal water where she would ground at low tide, extra men being put on board to pump. I then went on shore and immediately telegraphed to the New York board of underwriters, receiving a reply from the Atlantic M. M. Insurance Company of New York, that they had insured $1,000 on the freight money of said brig from Amsterdam to Providence, and asking me to protect their interest. Up to this time I had not seen the captain of the Anna, but had sent a messenger to him on shore. I wished to learn who was the owner or consignee of the cargo in Providence. The captain came to my office and informed me that he did not know as the cargo was consigned to order. I advised him to telegraph immediately to some owner of his vessel or to some agent, advising him of the condition of the vessel. He telegraphed to D'Wolf & Co., of New York; and it happened that one part-owner of his vessel, Mr. Crow, was in New York, who replied to Captain Dart's telegram that he would be in Newport the following morning. He came accordingly, and learned from the captain that a bottomry bond had been given upon the vessel at Amsterdam. Mr. Crow thought that the amount of the bond exceeded the value of the vessel, and therefore would not take any responsibility or agree to pay any portion of the expenses of pumping the vessel, or of towing her to Providence. I kept three pumpers on board, by agreeing to pay their expenses. The following morning I came to Providence, to find the consignee of the cargo, and there learned that A. & W. Sprague were expecting a cargo of iron from Europe. These gentlemen referred me to their agent, Mr. Greene, who declined to take any responsibility because the cargo was to be delivered on the wharf in Providence, he agreeing, however, that when the cargo should be delivered he would sign a general average bond, to pay a portion of the general average charges. I kept the men pumping, and became responsible for all the bills, and advised the captain to get the stern of the vessel out of water as much as possible. The men carried some twenty-five tons of iron forward by my and the captain's directions, which brought the leak out of water enough, so that the vessel was pumped out. I can't say whether this iron was carried forward by the men I assured for their pay, or by the crew. Probably both parties assisted. I don't say I sent these men on board. I told Captain Dart to get all the men that were necessary, and I assured him I would pay them. After the vessel was pumped out so that the pumps sucked, I telegraphed to Providence for a steam tug, agreeing to be responsible for the bill. I then, before the vessel started for Providence, had a survey by three competent men, a ship-carpenter, a captain and a retired

sail-maker, who approved of my plan to send the vessel to Providence, by means of the tug-boat, with extra men to pump, if necessary. The tug came down that night, and took the brig in tow about 4 o'clock next morning and delivered her safely in Providence. Before she started for Newport, I put on board of the brig a watchman at the instigation of the holder of the bottomry bond (a Mr. Blake), and also two or three men to pump. The watchman was to see that nothing was taken from the vessel. After the vessel was delivered in Providence A. & W. Sprague signed the average bond, and my action was approved by them, the insurers on the freight, Captain Dart and Mr. Crow." The witness further stated that he believed the vessel arrived in Providence the 17th of February, and that he had procured the average statement to be made up by Messrs. Bradford & Folger.

Upon this state of facts and proof the petitioners rest their claim—contending that under the law as it is, or as it should be declared, the expenses incurred and the services rendered by them are general average expenses, and that the fund in the registry is bound to contribute ratably to such general average expenses.

On behalf of the libellants it is averred and maintained: First—That no claim upon a general average lies against the bottomry bondholder, whether regard be had to the principles involved in the contract of bottomry, or to the recorded adjudications of the admiralty courts of England or the United States. Second—That the facts in proof in this case show no occasion or justification for an assessment by general average for the expenses incident to the springing aleak of the brig Anna. In a word, that had the petitioners (virtually but volunteers, or at most, but very active agents of the insurers of the freight), kept aloof, the captain and the crew of the brig would have brought her to Providence quite as soon, and in quite as good a condition as she was brought by the petitioners' aid. Third—That by the law of Holland, the locus contractus, a bottomry bondholder is exempt from a general average. Fourth—That divers of the charges comprised in the statement of general average on file are either illegal or very exorbitant, and few, if any of them, supported by any proof whatever, one of said charges being for expenses and services of Mr. Crow, an owner, to the amount of $40, and another of $25 for Captain Dart's services and provisions, to specify no others.

To these positions of the parties respectively, I have given deliberate and prolonged consideration, and to the many authorities cited by them, as well as to scores of others not cited at the bar, have given a not hurried examination. The conclusion to which I arrive is, that the petitioners' claim must be disallowed. Were the judgment of this court a final one—that is, not a subject of review

on appeal, I should deem it warrantable, if not expedient, here to state in extenso, my views of the several points presented, and the processes of reasoning, upon the authorities examined and the facts in proof, which lead me to the conclusion I have announced. But as an appeal lies to the circuit court, and as it seems to me not improbable that the petitioners may desire the judgment of that court upon the principal question involved (now for the first time, so far as I can learn, distinctly raised in a federal court), I refrain from saying anything in support or vindication of my judgment. I have only to add, and this from abundant caution, that my ruling in this matter is not to be received or represented as pro forma merely, on the contrary, it is the result of deliberation and research.

It may not be unprofitable to add, that upon a question not raised at the bar, viz.: Whether the admiralty has jurisdiction of a suit in rem for average contribution, the inquirer may with great advantage, consult [Cutler v. Rae] 7 How. [48 U. S.] 729; Beane v. Mayurka [Case No. 1,175]; [Dupont v. Vance] 19 How. [60 U. S.] 171; Rea v. Cutler [Case No. 11,599]; [Cutler v. Rae] 8 How. [49 U. S.] 615, Append.; and Dike v. The St. Joseph [Case No. 3,908]. As to this point, I here express no opinion.

The petition is dismissed, with costs.